NCRNC, LLC v Angona (2022 NY Slip Op 06041)

NCRNC, LLC v Angona

2022 NY Slip Op 06041

Decided on October 27, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 27, 2022

533462
[*1]NCRNC, LLC, Doing Business as Northeast Center for Rehabilitation and Brain Injury, Appellant,
v
Douglas Angona, Individually and as Power of Attorney for Sylvia Lehtinen, Defendant, and Robert Gibson, as Commissioner of the Columbia County Department of Social Services, Respondent.

Calendar Date:September 14, 2022

Before:Garry, P.J., Lynch, Aarons, Pritzker and McShan, JJ.

Hinman, Howard & Kattell, LLP, Albany (Linda B. Johnson of counsel), for appellant.
Johnson & Laws, LLC, Clifton Park (Nicole C. Haddadnia of counsel), for respondent.

Garry, P.J.
Appeal from an order of the Supreme Court (James P. Gilpatric, J.), entered April 13, 2021 in Ulster County, which, among other things, granted defendant Commissioner of Columbia County Department of Social Services' motion to dismiss the amended complaint against him.
Plaintiff, a licensed nursing home facility, provided health care services to Sylvia Lehtinen from November 20, 2015 through September 8, 2016. After Lehtinen's health insurance ceased covering plaintiff's services, Lehtinen's son and attorney-in-fact, defendant Douglas Angona, failed to apply for medical assistance benefits on her behalf or otherwise pay her bill. In July 2016, plaintiff submitted a chronic care Medicaid application to the Columbia County Department of Social Services (hereinafter DSS), purportedly on Lehtinen's behalf. No decision on that application was rendered.
In November 2018, plaintiff commenced this action against defendants, setting forth two causes of action against defendant Commissioner of Columbia County Department of Social Services. In the first cause of action, plaintiff sought a judgment declaring that Lehtinen was eligible for full Medicaid benefits beginning April 1, 2016 through September 8, 2016, directing the Commissioner to process and approve plaintiff's July 2016 application and awarding plaintiff certain damages. In the second cause of action, plaintiff alleged that the Commissioner negligently failed to discharge its duty to provide Medicaid coverage to Lehtinen, an allegedly eligible patient, and thereby proximately caused certain damages. Through causes of action for breach of contract, nonpayment of an account, unjust enrichment, fraudulent conveyance and breach of fiduciary duty, plaintiff also sought damages from Angona in the amount of Lehtinen's private pay balance.
The Commissioner answered and later moved to dismiss the amended complaint on several CPLR 3211 (a) grounds, arguing, in pertinent part, that plaintiff failed to satisfy notice of claim requirements and that the July 2016 application was a nullity upon which DSS had no obligation to pass because plaintiff was never authorized to act on Lehtinen's behalf. Plaintiff opposed and cross-moved for certain relief not presently relevant. Supreme Court generally agreed with the Commissioner, dismissing the amended complaint against him in the absence of a valid application and further agreeing that plaintiff's second cause of action, expressly sounding in tort, required a written notice of claim. Plaintiff appeals.
We agree with Supreme Court that the July 2016 application was a nullity and that the Commissioner therefore conclusively established that plaintiff can maintain no cause of action against him (see generally Rovello v Orofino Realty Co., 40 NY2d 633, 636 [1976]; Budin v Davis, 172 AD3d 1676, 1678 [3d Dept 2019]). An application for public assistance, including Medicaid, must be made on a state-prescribed form, and, if "the applicant, whose signature is required[*2], is incapable of signing the application because of physical incapabilities, or mental incompetency, the application shall be signed on behalf of such person by his [or her] authorized representative" (18 NYCRR 350.4 [c] [4]; see 18 NYCRR 360-1.2 [b]; 360-1.4 [i]; 360-2.2 [d] [1]; see also 42 CFR 435.923 [a] [1]). Here, the July 2016 application was signed by plaintiff's Medicaid coordinator, purportedly acting as Lehtinen's "authorized representative" and submitted "pending legal guardianship."[FN1] However, the record contains admissions that neither plaintiff nor its Medicaid coordinator was ever so authorized. Plaintiff points to an affirmation in the record in which Angona's counsel asserts that the July 2016 application was valid and that it is customary for a Medicaid coordinator to sign such an application on behalf of a patient. These self-serving and legally unsupported allegations were appropriately disregarded by Supreme Court.
Plaintiff next mistakenly relies upon Long Beach Mem. Nursing Home v D'Elia (108 AD2d 901 [2d Dept 1985]). The question therein was whether the plaintiff nursing home was required to make a diligent effort to obtain a power of attorney from the patient prior to pursuing, on the patient's behalf, an administrative appeal from an adverse medical assistance determination (id. at 902). The regulation governing a representative for that purpose requires that "[a]n individual or organization, other than an attorney, representing an appellant must have a signed, written authorization from the appellant, unless it is impracticable for him/her to execute one" (18 NYCRR 519.9). No impracticability exception, excusing prior authorization to act on an applicant's behalf, is provided for in the regulations controlling assistance applications in the first instance (see 18 NYCRR 350.3 [a] [1]; 350.4 [c] [4]; 360-2.2 [d] [1]; see also 42 CFR 435.923 [a] [1]; [f]).
For the first time on appeal, plaintiff argues that the Medicaid application itself contemplates a nursing home applying for assistance on behalf of an incapacitated resident. The form plaintiff points to states that it must be completed if someone other than the applicant has signed the Medicaid application and instructs that the signatory must either provide the documentation that authorizes them to so apply or attest that the applicant is incompetent or incapacitated and therefore unable to provide such written authorization (see New York State Department of Health, form DOH-5147 [Apr. 2015], available at https://www.health.ny.gov/health_care/medicaid/publications/docs/adm/17adm02_att1.pdf [last accessed Oct. 21, 2022]). Assuming without deciding that this argument falls within the preservation exception for unavoidable questions of law appearing on the face of the record (see generally Matter of Indeck-Corinth L.P. v Assessor for the Town of Corinth, 204 AD3d 1145, 1147 n [3d Dept 2022]; Palmatier v Mr. Heater Corp., 163 AD3d 1192, 1196 [3d Dept 2018]),[FN2] plaintiff [*3]never completed the foregoing form, and we therefore do not consider whether its completion would have rendered the July 2016 application valid.[FN3]
We are also unpersuaded by plaintiff's equity arguments, including that the Commissioner "acted upon" the application by requesting certain additional documentation during its preliminary investigation thereof — such as a release with Angona's signature authorizing plaintiff to act on Lehtinen's behalf (see generally 18 NYCRR 351.1 [a]; 351.2; compare Department of Health, Fair Hearing decision No. 7718916Y, available at https://otda.ny.gov/fair%20hearing%20images/2018-11/Redacted_7718916Y.pdf [last accessed Oct. 21, 2022]). Plaintiff also urges that we should excuse its submission of an unauthorized application due to Angona's alleged failure to fulfill his obligations as Lehtinen's attorney-in-fact. Plaintiff had several lawful avenues of recourse in this situation and did, in fact, commence a Mental Hygiene Law article 81 guardianship proceeding regarding Lehtinen. Plaintiff, however, ultimately failed to pursue that proceeding to set aside Angona's power of attorney and appoint an independent guardian. Further, this action still stands as against Angona. To the extent that plaintiff maintains that it was premature to grant the Commissioner's motion, we agree with Supreme Court that the opportunity to undertake discovery and question the DSS employee(s) who handled the July 2016 application would yield no information relevant to the issue of authorization. In sum, there is no basis upon which to disturb Supreme Court's order dismissing the amended complaint against the Commissioner.
In light of our conclusion, we do not address plaintiff's claims regarding Supreme Court's additional bases for dismissal.
Lynch, Aarons, Pritzker and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: In August 2016, plaintiff commenced a Mental Hygiene Law article 81 guardianship proceeding with respect to Lehtinen, asserting that it had not received a copy of a power of attorney from Angona and seeking the appointment of a guardian for Lehtinen for the purpose of, among other things, applying for Medicaid benefits. That proceeding was ultimately withdrawn after the power of attorney was produced.

Footnote 2: The subject form is part of the record because it was annexed to at least one of DSS's requests for a release, with Angona's signature, allowing plaintiff to act as Lehtinen's authorized representative.

Footnote 3: This argument is also of dubious merit. In light of the above-discussed regulations concerning such applications, the option to complete the subject form on behalf of an incompetent or incapacitated individual appears to presuppose that said individual does not have any representative authorized to act on their behalf, unlike the circumstance here (see generally 42 CFR 435.923 [a] [2]).